[S. C., 5 Hay., 242.]
This is a bill brought by Pea, the administrator of Tate, against his heirs. The plaintiff alleges that, in the course of his administration, he had paid debts due by the intestate to a considerable amount, more than the value of the assets which came to his hands, and prays to be reimbursed out of the real estate which descended to the heirs.
The defendants say, in their answer, that the intestate did not assume within three years before the commencement of this suit. And claim the benefit of the Act of Limitations of 1715, c. 27.
They also say that neither the complainant, nor those alleged by him to have been creditors, have exhibited their demands, or made their claims, or brought their suit or suits against the defendants within seven years after the death of Tate the intestate, and claim the benefit of the Act of 1715, c. 48, sec. 9. Tate died in March, 1803. The complainant procured letters of administration in May following.
Both acts relied on by the defendants were passed in the same year. In the first, specialty contracts are not included, and might be recovered, unless by long delay the presumption should arise that they had been paid; and lands descending to the heir would have been liable to satisfy the debt of the ancestor, in case *Page 2 
the heirs were named in the bond, and the heirs would not have been discharged by a shorter lapse of time than the ancestor.
But it is alleged that the heir is relieved from this liability by 1715, c. 48, sec. 9, unless claim be made against him by the creditor in seven years after the death of his ancestor. It is true the expression used by the legislature is broad and comprehensive. It creates, a bar without respect to the nature of the demand, or the disability of the creditor to sue. There is no reservation for the case of infants, femes covert, or for those whose debts, by the terms of the contract had not become due before the expiration of the term. And where no exceptions are made in the law, the Court can not make any. But still, in this as in all other cases, the words used should be considered with reference to the subject-matter respecting which they are used, and not be extended beyond it. In this act, the legislature seems to have only in view "the rules to be observed in proving wills and in granting letters testamentary and of administration, and to regulate the conduct of executors and administrators." With reference, then, to that subject, the ninth section requires all creditors, as well infants, c., as others, as well those whose debts are not then due as those whose debts are due, to make their claims in seven years, or be barred. In the case of administrators, this bar extends not only to creditors, but to the distributees, or next of kin. If they do not recover their money in seven years, the surplus must be paid to the church-wardens for the use of the parish. No intimation having been given in the act that heirs were intended, they seem to be left in the same situation with respect to creditors as if the act had not passed. The conclusiveness of this bar, it may be observed, is considerably relaxed by the Act of 1784, c. 23, in which this section is quotedverbatim, and then follows a direction that "so soon as an administrator hath finished *Page 3 
his administration on such estates, and no creditor shall make any further demand, the residue shall be deposited in the treasury, there to remain without interest, subject to the claim of creditors and the lawful representatives of the deceased, without being subject to the limitation of time." By this act, the surplus which had not been demanded by the next of kin, even after the payment into the treasury, was subject to the claim of creditors without limitation. How is he to get the money? Certainly not by suit against the treasurer, but against the administrator, who can not plead the statute but by pleading fully administered; the creditor may proceed to judgment and receive his money from the treasurer.
By the Act of the 5th of George II. c. 7, all real estates in the colonies were made liable to and chargeable with all debts of every description, and to be assets for the satisfaction thereof, in the same manner as real estates were liable for the satisfaction of debts due by specialty, and subject to the same process of execution as personal estate. In England, as well as here, the personal estate was to be first applied, and, if insufficient, the real estate was to be assets for the discharge of debts. In conformity to this principle have all our laws been framed. The personal estate, in every instance, is first liable before the real. By the Act of 1784, c. 11, directing the mode of proceeding against the real estate when the personal is insufficient, it is strongly implied that the suit must first be prosecuted to judgment against the personal representative, and the personal assets be exhausted, before the real estate can in any instance be chargeable in the hands of the heir, who is to be made a party by sci. fa. It is true there are no negative words declaring that a creditor shall not sue the heir in the first instance. As all demands are placed in this respect upon an equal footing, and from the tenor of this act and all other acts securing the real estate, so long as any personal *Page 4 
can be had, it would seem that, where there is a personal representative, the heir can not be compelled to pay the debt of the ancestor until the demand be ascertained by judgment against the personal representative, and a deficiency of assets in his hands. And, if he has paid over to the legatees or distributees, the creditor must proceed against them on their bonds given to refund, and not against the heir.
The Act of 1789, c. 23, repeal's all laws coming within the purview and meaning, and, as I believe, repeals the ninth section of 1715, c. 48. It is on the same subject-matter, and makes provisions wholly inconsistent with it. It prescribes a limitation, but different from the other in its commencement and duration. In the former, the time begins to run from the death of the debtor; in the latter, from the qualification of the executor or administrator. The former does not terminate till seven years after its commencement; the latter in two or three years, as the case may be. In the former, there are no exceptions whatever, and the Court can make none; in the latter, there are exceptions of infants, c., who have one year after the disabilities are removed. There is also an exception in favor of the creditor who makes his demand, and delays suit at the request of the executor or administrator. The Court, seeing these exceptions, by the known rules of construction can allow of others of a similar nature.
It has been insisted that, if this act repeals that of 1715, and if the latter can not be pleaded by the heir, he is left wholly unprotected against stale demands. I answer he has the benefit of the general law of limitations, and of the Act of 1789.
He for whose benefit an act of limitation is made, may or may not insist on it. If the executor or administrator does not plead the statute, and judgment is had against him, and he pays the debt out of assets; or if he pays just debts without suit, — these shall be *Page 5 
allowed him in the settlement of his accounts, and his not taking advantage of the limitation shall not be deemed a devastavit. If he does not plead the statute of limitations, and the plea of fully administered be found for him, the legatees or distributees may plead it to the sci. fa. brought against them on their bond for refunding, and the heir may also plead it to protect the real estate descended to him.
If the creditor commence his suit in due time, so that the personal representative could not avail himself of the statute of limitations, neither shall the legatee or he be permitted to avail themselves of it by plea to the sci. fa., unless perhaps in cases of unreasonable delay.
If an executor or administrator pay debts more than the amount of assets in his hands, he is placed on the same footing, and has a right to reimbursement on the same terms, that the creditor would have to enforce his demand, and may in like manner be barred by the statute.
As to the continuance of 1715, c. 48, sec. 9, after the Act of 1789, or, if unrepealed by the latter act, the decisions in this State, and in North Carolina, and in the Circuit Court of the United States, and in the Supreme Court of the United States, are both ways; we are therefore at liberty to pursue either. As to the applicability of the Act of 1715 to the case of heirs, the decisions in North Carolina and in this State being in favor of the heir, we are bound to say that it does apply to him and still exists. But then it may be construed so as not to hinder such benefit to the heirs under 1789 as results from the present construction. It may be subject without contradiction to such interpretation as is now put upon the word "claim," not extending it to action. The heir may now say, you did not claim in seven years. He may also say, you were barred as to the personal estate under 1789, and can not thereby exonerate the personal estate and come upon me. *Page 6 
The latter act will extend to both heirs and devisees; whereas the terms used in the former could not extend to devisees, they not being liable when the Act of 1715 passed, unless it be first admitted that the statute of William and Mary against fraudulent devises was in force here, which certainly was not until the 5 Geo. II. The letter of 1715, c. 48, will also extend to judgment against the ancestor in his lifetime, which in 1715 could not be pursued by action against the heir, but only by sci. fa. against him as terre-tenant, which was founded on the record of the judgment that executors and others are bound to take notice of, and probably the heir also, where notice is material. In the latter instance, the judgment could only affect one-half of the lands, and the Act of 1715 could only be a bar in this instance as to one-half, whereas now the other half also will be protected against the creditor by notice and action within the prescribed time.
It seems to me strange to suppose that the real estate can be reached otherwise than through the personal. It seems equally strange that a creditor may be barred as against the executor, and at the same time not barred as against the heir. He ought not to be barred as to the one and not the other; why exonerate the personal estate, and leave the real estate exposed till seven years have expired? It is admitted on all hands that an advertisement pursuant to the Act of 1789, c. 23, section 5, will enable the executor to plead in bar in two years. Shall he really be still liable five years longer? I am of opinion the Act of 1789, c. 23, section 5, is not conditional, but directory, because of the disappointments which such construction would bring upon disabled creditors; for I can not think the exceptions in 1789 are ingrafted upon the Act of 1715. If they were, then that act would become subject to equitable exceptions not stated in it, in like manner as is the common act of limitations. This is not consistent with the precedents which, it is said, we are bound to *Page 7 
follow. Conforming to them we can not make this addition; and therefore they must either be sacrificed at the pleasure of the executor, or he preserved by the unconditionality of the clause in question. If unconditional, all admit that 1715 is repealed as to executors. Shall the personal estate, by reason of these exceptions in favor of disabled persons, be suitable twenty or more years hereafter, and the real be absolutely exempt in seven?
Upon the whole, if no former decisions had ever been made upon the Act of 1715, c. 48, section, 9, I should think it never was intended to embrace the case of heirs. But taking it, as I think we ought, some of these decisions to be in force as to them, then in my opinion the word, claim means notice to the heir, not on action at law, which if once given within the seven years, as the law stood under 1715, prevents the bar of the creditor. The distinction between claim and action is evident in the Act of 1789, which excuses the bar if claim be made and suit brought within the limited time.
This argument, at the request of the bar, has been founded on the answer as if the same matter were pleaded. The answer must stand, and the evidence need only be pointed to the part of the plea which denies that any claim was made in seven years.